Good morning, counsel. My name is John Lambros. I'm here on behalf of Mr. Leonard Vignolo, the appellant. I will address the three certified questions, and unless the court has any questions regarding the uncertified questions, since counsel did not brief them, I think it would be appropriate if I did not present any argument on those points. Beginning with the sufficiency of the evidence, corpus delecti issue. Obviously, the Supreme Court rule that will sort of provide the guiding light here is the Jackson v. Virginia case. Any rational trier of fact could have found each and every essential element of the offense a first-degree murder beyond a reasonable doubt. With that in mind, the Federal courts will look to the State court definition of first-degree murder and corpus delecti for first-degree murder. And under the Nevada case that I cited in the briefs, Buchanan v. State, 69 Pacific 3rd at 705, this is a circumstantial evidence case. And in circumstantial evidence cases in Nevada, the Nevada Supreme Court has said, and has said this for quite a while, that the circumstantial evidence must exclude to a moral certainty all other hypothetical theories of guilt or hypothetical possibilities of guilt. Corpus delecti, in order to be satisfied under Nevada law for first-degree murder, requires that the State prove both the fact of death, which has not been, which was never conceded in this case, that Ms. Carr did indeed die, and that her questionable fact of death, if you will, was occurred by the criminal agency. What took place as a result of the criminal agency of the accused, or in this case, obviously, Mr. Vignola. Now, in 1981, September of 1981, the offense conduct, if you will, occurred, as alleged in the information that was filed eight years later. I think the truly telling thing here is that the State of Nevada waited for seven years, from at least 1981, when they identified Mr. Caboli and both Mr. Caboli and Mr. Vignola as suspects, until 1988 to initiate the prosecution. And technically, I guess, the prosecution itself was not initiated by the district attorney's office until eight months after Detective Leonard submitted his affidavit and requested a criminal complaint. Why that's important is, why that gap in time is important, I think, is that Detective Leonard did not present or have at his disposal any additional evidence of corpus delecti, either prong, fact of death, or criminal agency, in 1988, when he presented the affidavit in support of the criminal complaint, that he did in 1982, when he interviewed Mr. Vignola for the first time. Well, you accept the passage of the presumptive period of time, but what difference does that make? Well, I think it – I think the difference that it makes is that – and it sort of ties into – it ties into the issue that was not – we weren't allowed to present below because of the exhaustion problem. But it ties into the fact that Mr. Vignola was unable to mount a defense at the time that – in 1982, and really point the finger at who Detective Leonard really thought was the essential – one of the essential suspects, and that was Mr. Caboli. And that's a theory of defense that goes to the jury. I think that the – because it's kind of a two-part analysis here. The sufficiency of the evidence claims necessarily includes, if you will, whether or not, as a matter of law, an information should have been filed. And what I guess what I'm saying is, is if the State of Nevada, and by its own admission, essentially during the pre-trial motion hearing on the motion to dismiss the information, the State of Nevada essentially admitted that they didn't want to proceed in this case in 1982 because they didn't have any evidence, and that the only – their only – the only motive – the only fact that motivated them to proceed in 1988, if you will, or 1989 because they sat on the DA's desk for eight months, was this civil presumption. I would – it's my position that that does not, as a matter of law, satisfy the Nevada standard with regard to Corpus Delecti, number one, which would be a due process violation. And number two, more importantly, did not satisfy the – or not – equally as important, did not satisfy the Jackson v. Virginia requirement that there was proof beyond a reasonable doubt, even when viewed in the light most favorable to the State. Wouldn't proof beyond a reasonable doubt be difficult if there was, in fact, a legal presumption good for seven years, or however many years it was good for? Wouldn't that presumption alone be just about plenty to knock down the presumption – proof beyond a reasonable doubt? Well, the presumption would – I believe that if the presumption were employed in that manner, then it would be an unconstitutional presumption because, obviously, you could not have an irrebuttable presumption on an essential element of the offense. And – No, I'm not trying to make it irrebuttable. I'm just saying that it's – a presumption is some evidence. Right. And I'm certainly – wouldn't you think a defense lawyer would be arguing the presumption in that case? Do you mean the State would be arguing the presumption? No, no. No, the defendant. Oh, I see. I see. Yeah. Wouldn't you – and so when you just say, well, that's not important that they waited seven years so that the presumption would expire, it seems to me like it's a pretty good reason to wait. Well, and – That would be a very strong defense argument to upset the burden of proof that the government has. And admittedly, the defense did make that argument. The defense made that argument to the jury. But nevertheless, I mean, obviously, there's a – What argument could they make? Well, the defense made the unreasonable delay argument to the jury. The defense made the argument in closing that this was just a – I assume that. You're raising it here. But I'm just asking you in response to that, isn't there a very good reason for the delay? Well, when viewed in those terms – Well, that's a pretty big piece of evidence for the defense. Well, and I don't want to languish too long because of the time that I have with regard to the fact of death. I think the more important or the more compelling element with regard to corpus delecti and the elements of murder are whether or not there was, in fact, a criminal agency that occurred. In other words, did Mr. Vignolo do something under the law that would define what happened here as a homicide? And there was – I mean, if you look at the proof, if you look at the proof that was presented, that under either theory of the State's case – and the State had two theories. Rachel Carr was killed in the office or Rachel Carr was abducted from the office, put in the van, killed in the van, or taken from – in the van to some other location and killed there. Not one bit of forensic evidence presented by the State, even remotely, could have led to an inference that either one of those three scenarios occurred, beginning with – Well, you had him – you had them fighting. You had the motive of getting away from the dead. You had him ask someone to go get his briefcase in which people had seen a handgun with a silencer. You had him – you heard him fighting. You had him behave peculiarly with Carr's vehicle – excuse me, with the van. Right. Her vehicle was there in a very unusual condition for her when she was on the premises – when she wasn't on the premises. And you had a confession. Now, the jury could have disbelieved any one of those things, but now looking back down on it, why does Jackson kick in? Well, take – first of all, your – essentially, the rendition of the facts that you just presented, Judge Reimer, were almost the identical facts that were presented in closing argument by the State. And my response to that would be the same response that we had in the Court below, and that is, number one, beginning with the confession. The confession is irrelevant for purposes of the corpus delecti for two reasons. Number one, it's legally irrelevant unless there's other evidence that would establish corpus delecti. Number two, the confession was not in existence at the time in which the preliminary hearing occurred or the time in which the information was filed. I'm sorry. What does that have to do with anything? I'm sorry. I just don't know. Well, as – what I'm saying is, as a matter of law, the case shouldn't have progressed beyond the information stage. So I'm just trying to point out the confession. The confession really had to be – But it did. And so the issue now is whether there was sufficient evidence to sustain the conviction, isn't it? And each one of those – each one of those items, either separately or taken as a whole, does – cannot – my position, obviously, cannot – cannot lead to a conclusion that that was sufficient evidence to a moral certainty, because it's all circumstantial evidence. This Court cannot discount that Mr. Cavoli was not the murderer. And that was the theory of – that was our theory of defense, essentially, at trial. That was Mr. Vignola's theory of defense. And he didn't really get a chance to pursue it that much because of – and it's something I wanted to talk about with regard to the exhaustion issue. But I just wanted to make a couple more points with regard to this sufficiency claim, and points that I think are compelling and – and lead to – I think should funnel this Court in the direction of that moral certainty problem, and that is the forensic evidence did not point to guilt. The hair evidence, the blood evidence, the fingerprint evidence, all of it was inconclusive. Unless the Court has any other questions about the sufficiency issue, I'd like to talk about what I think really is almost a hand-in-glove kind of a point with regard to this case, and that is the State's ability to convince the trial court to limit the scope of cross-examination of Mr. Cavoli. As the Court – as this Court knows, the Court below found that claim to be unexhausted. It's my position, and it's our position on appeal, that as a matter of law, the lower court was errant on that because the lower court relied almost exclusively on the panel decision in Peterson v. Lambert. The Court did not, in deference to the lower court, the Court did not have at its disposal this Court's en banc opinion. And to Chris's – Nor the U.S. Supreme Court's decision after that in Baldwin. In Baldwin, yes. And essentially, that is the – as I pointed out in my reply brief, that appellate counsel, direct appeal counsel for Mr. Vignolo, presentation of this Confrontation Clause claim – and I've excerpted it in the excerpt of record at page 199 and in the briefing. You know, admittedly, it was not law review-type work, but, you know, the claim was – the claim was made. Thus, the trial court erred in granting the States motion in limine since their decision limited the defendants' constitutional right to confrontation pursuant to this Court's, the Nevada Supreme Court's, prior ruling in Sain v. State. Then the briefing went on to discuss another Nevada Supreme Court case entitled Bushnell v. State. And in Bushnell – and this is, again, consistent with Baldwin, Reese v. Baldwin. In Bushnell, the Nevada Supreme Court analyzed the issue before them at the time under the Confrontation Clause. They cited Douglas v. Alabama. They cited Turner v. Louisiana. And, you know, those cases have some whiskers on them now because at the time of this a little bit more recent Confrontation Clause cases, but nevertheless Confrontation Clause cases. The lower court – But what you're really saying, if I hear you right, is that it is enough for an appellant to cite – to make an argument that's based on a specific Nevada evidentiary rule. I've forgotten the number now. I'm sorry. I think Rule 101 it was, yes. And cite a couple of Nevada cases. And then if you read one of those cases, not the other one, if you read one of those cases – and actually Bushnell wasn't even cited until Reply, but put that aside. Okay. In Reply, you get a Nevada State court case that's cited, and one or two of the string cites in that case refer to the Federal Constitution. That's enough? That plus a – and the – I don't know if you mean by string cites signals or parentheticals in the citation. Yeah, sort of. I mean, as part of a long string cite. Right. And – Smith v. Jones. In your hypothetical, I'd say, yeah, that probably would be enough. But we had more. Not a lot more, but we did have more. Which was what? We had, you know, it was a violation of the Confrontation Clause of the Constitution. And citation to Bushnell. Now, under Baldwin, 124th Supreme Court at 350, Justice Breyer said, look, all you need to say is Federal and you're in the ballgame. I would say that, you know, if all you needed to say was Federal, then by saying Confrontation Clause and then citing Bushnell, which was analyzed by the Nevada Supreme Court clearly as a Confrontation Clause case, citation to Turner and Chapman and the other cases, then we should have been able to brief that on the merits. And it's my position that at the very least should be able to – I would ask this Court to find in favor of us on the exhaustion question, remand this fact down so we can have full briefing on this Sixth Amendment issue, which is a compelling issue. It was the heart of the case, being able to cross-examine Cavoli, and at the very least allow us to do that in front of the lower court. And unless the Court has any further questions, I'm – Okay. Thank you. Thank you. Mr. Warwick. May it please the Court. My name is John Warwick. I'm a Deputy Attorney General for the Nevada Attorney General's Office, representing the Respondent in this matter. The first issue addressed by counsel is the sufficiency of evidence issue. I think it would benefit us to take a look back, at least in the State's point of view, is that what Mr. Vignola was asking this Court is to be rewarded for doing a very good job of hiding the body. To this day, Rachel Carr's body has not been found. The Nevada Supreme Court's decision in this matter regarding sufficiency of evidence was not clearly contrary or an unreasonable application of established Federal law. If you look at the Nevada Supreme Court's decision, the Excerpt of the Record 203, that shows that they applied – they didn't cite Jackson v. Virginia. They applied the proper principles. They looked at the evidence, and under Jackson v. Virginia, the standard is could any rational trier of fact found the defendant guilty? And that's exactly the case here. That's all that it amounts to. The arguments regarding corpus delicti in Nevada, I think Judge Reed's order dismissing the petition, he addresses those and he lays out the analysis of Nevada State law that it is possible in a case involving first-degree murder to convict someone based solely upon circumstantial evidence where the body is not found. And none of that runs contrary to Jackson v. Virginia. The – and the Court's touched upon some of the evidence that was mentioned. We had testimony during the trial that Mr. Vignolo threatened one of the witnesses not too long after the killing about what had he told the police. And when he was informed, in essence, that he hadn't – that Mr. Witt had not told the police very much, Vignolo said, well, good, then I don't want to have to kill you, or words to that effect. And then you did have that confession, that statement made to his mother-in-law that, you know, I killed a young girl years ago and, you know, her body was hidden somewhere. So those are critical points about the amount of evidence that was presented to the jury. And the jury was well within their bounds in believing that evidence, overcoming all inferences to the contrary, and convicting Mr. Vignolo. There is nothing against Jackson v. Virginia in what the jury did or what the Nevada courts did in that instance. Now, the question as to – does the Court have any further questions for me regarding sufficiency? Regarding exhaustion, Judge Reed's original motion or order regarding the State's motion to dismiss from November 6, 2002, did not have the benefit of the en banc opinion from Peterson v. Lambert. However, the judge's analysis in that, in the State's point of view, still is sufficient to uphold the principles that are required in this instance, and those principles are that the issue be presented to the Federal courts squarely, not hidden, not referred to obliquely. If you look at the grounds that were raised in the Nevada State Court, they only addressed violations of Nevada's evidentiary statutes. That was a choice that was made by counsel. And that's an important distinction. This is not a pro per post-conviction State habeas petition. It is the direct appeal with the assistance of counsel. And when you have counsel in these matters, the choices that counsel makes count. They matter as to how the issue should be treated by a court that's going to look at exhaustion later on. And that's the case here. It was not sufficiently presented to the Nevada courts. The courts should have to play a guessing game. There was some discussion of, you know, if you use the word Federal, you know, perhaps in this case there may be situations where that amounts to a magic word which at least gets you in the ballpark. That did not happen here. I mean, this counsel took very deliberate steps to just refer to Nevada evidentiary statutes. That's the State's position on that. And basically those were a strategic choice made by counsel. The pre-indictment delay issue, though, that was raised by counsel, it's our position that it's not a certified issue. That's not before the court. There is a reason that there is no statute of limitations on a murder case. They are the most serious cases. And in addition, people go to extraordinary lengths to get away with murder. And in this case, Mr. Vignola did a very good job of hiding the evidence. However, to his dismay, he has been convicted. And basically, as I said before, he's asking this Court to reward him for doing a good job of hiding the body. And if the Court has no further questions, I'd like to conclude my argument and ask you to uphold Judge Reed's opinion. Thank you. Thank you, Mr. Warrick. Mr. Lambert. Unless the Court has any questions of me, I'm prepared to submit it. All right. I think not. Thank you both. Thank you very much. The matter just argued will be submitted and the Court will stand adjourned. All rise. Court is in session. Court is adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Rymer, Hawkins, Brewster